NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0847n.06
Filed: October 17, 2005

Case No. 04-5358

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| FRANK E. ADAMS, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| FLORA J. HOLLAND, WARDEN, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| | ) | |

BEFORE: BOGGS, Chief Judge; BATCHELDER and GIBBONS, Circuit Judges.

ALICE M. BATCHELDER, Circuit Judge. Petitioner Frank Adams, a convicted murderer, appeals the order of the district court dismissing his petition for a writ of habeas corpus, arguing that the Tennessee trial court violated his Sixth Amendment rights under the Confrontation Clause when it admitted an out-of-court statement by his non-testifying co-defendant, Timothy Crowell, that Adams had killed Thomas Weser. Because Crowell's statement was admitted for a non-hearsay purpose, consistent with clearly established Supreme Court precedent, we affirm the district court's order dismissing Adams's petition.

BACKGROUND

In the early morning hours of February 5, 1989, Adams and Crowell robbed a convenience store and, an hour or so later, robbed and murdered Timothy Weser, a student at Vanderbilt

University. Adams and Crowell were indicted as co-defendants in the murder of Weser, and their cases were severed for trial. Adams was tried first. Although it was not entirely clear which defendant committed which specific acts in the events surrounding the murder, the state's theory was that Crowell had robbed the convenience store while Adams waited in the car as the getaway driver, and that later that night, the two men switched places and Crowell waited in the car while Adams robbed and murdered Weser.

The state charged Adams with felony murder and aggravated robbery, and attempted to show that Crowell and Adams were carrying out a scheme whereby they would take turns committing robberies to obtain money with which to buy illicit drugs. As part of its proof, the state elicited testimony from Lisa Cantrell-Williams, Adams's former girlfriend, that she overheard the two men planning the robberies earlier that night, and that Adams was acting suspiciously when he returned home. On his cross examination of Cantrell-Williams, Adams sought to admit testimony that Cantrell-Williams had overheard Crowell making statements suggesting that it was he, and not Adams, who had done the shooting. The state objected to this testimony because it would not have the opportunity to cross examine Crowell, who had asserted his right against self incrimination, but the court ruled that the testimony was admissible under the unavailable-declarant exception to the hearsay rule. Before the trial resumed, the state notified the court that it intended to introduce other out-of-court statements to impeach the statement by Crowell, under Tenn. R. Evid. 806, and the court indicated that it would allow impeachment evidence.

After Adams elicited Crowell's self-incriminating statement from Cantrell-Williams, the state informed the court of its intention to introduce a statement made by Crowell to Detective Mike Smith, in which Crowell asserted that it was Adams who had killed Weser. Specifically citing the

2

Supreme Court's decision in *Tennessee v. Street*, 471 U.S. 409 (1985), the court indicated that it would permit Smith to testify to Crowell's inconsistent statement, but that the testimony was admissible only for the purpose of impeaching Crowell's self-incriminating statement testified to by Cantrell-Williams, and not as substantive evidence against Adams. After Smith testified that Crowell had told him Adams had shot Weser, the trial judge gave a lengthy limiting instruction to the jury, admonishing it that Crowell's statement was to be considered only for the purpose of judging Crowell's credibility, not as substantive evidence against Adams. Adams was ultimately convicted of felony murder and aggravated robbery, for which he received a sentence of life in prison plus twenty years.

The Tennessee Court of Criminal Appeals (TCCA) affirmed Adams's conviction, including the trial court's handling of the Confrontation Clause issue. *See State v. Adams*, 859 S.W.2d 359 (1992). Although the TCCA did not cite the Supreme Court's decision in *Street*, it did determine that Smith's testimony relaying Crowell's contradictory statement constituted valid impeachment (i.e., non-hearsay) evidence under Tenn. R. Evid. 806, and that the trial court had properly instructed the jury that such testimony could be considered only for the limited purpose of impeachment. *See id.* at 363. Adams raised the Confrontation Clause issue again in his federal petition for habeas corpus. The federal district court initially dismissed this claim as procedurally defaulted. A panel of this court affirmed, *Adams v. Holland*, No. 00-6575, 2003 WL 1786649 (6th Cir. April 4, 2003), but reconsidered its opinion after considering a recently enacted Tennessee procedural rule, and then remanded Adams's case to the district court for a ruling on the Confrontation Clause claim on the merits. *Adams v. Holland*, 330 F.3d 398, 407 (6th Cir. 2003). The district court then dismissed Adams's claim on the merits, holding that, in light of *Street*, the TCCA's decision was neither

3

contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1). We granted a certificate of appealability on the Confrontation Clause issue.

## ANALYSIS

In *Tennessee v. Street*, 471 U.S. 409 (1985), the defendant testified at trial that his confession had been coerced by the Sheriff, who had read to the defendant his accomplice's confession and directed him to "say the same thing." The State then elicited the testimony of the Sheriff, who denied the defendant's story and read to the jury the accomplice's confession, pointing out the differences between the two confessions. The Supreme Court distinguished between the use of hearsay evidence as substantive evidence against a criminal defendant, and the use of such evidence for a non-hearsay purpose, such as rebuttal or impeachment, and held that the latter use "raises no Confrontation Clause concerns." *Id.* at 413-14. The Court noted that the accomplice's confession had not been introduced to prove the circumstances of the murder, but instead had been introduced to rebut the defendant's claim that his confession had been coerced. *Id.* This non-hearsay use, the Court held, was consistent with the Confrontation Clause. *Id.* at 417.

Adams did not see fit to mention *Street* in his initial brief on appeal, relying instead upon *Bruton v. United States*, 391 U.S. 123 (1968), which held that a co-defendant's confession, which also implicated the defendant, could not be admitted in the joint trial of the two conspirators without violating the non-declarant defendant's rights under the Confrontation Clause unless the co-defendant was available and subject to cross examination. *Id.* at 126. Adams's case is distinguishable from *Bruton*, however, not only because Adams and Crowell were not tried jointly, but because the testimony in Adams's case was admitted for the non-hearsay purpose of impeaching hearsay testimony introduced by Adams. Moreover, the *Street* Court, whose holding squarely

4

dispenses with Adams's Confrontation Clause argument, explicitly distinguished *Bruton*. *See Street*, 471 U.S. at 413-16 (noting that unlike *Bruton*, in which the co-defendant's confession was introduced to prove the truth of its assertions, the accomplice's confession in *Street* was introduced, not to prove the truth of its content, but for the non-hearsay purpose of rebutting the defendant's claim of coercion).

Adams relies also on *Crawford v. Washington*, 541 U.S. 36 (2004), but this reliance is likewise unavailing. First, because the TCCA decision affirming Adams's conviction was handed down in 1992, the Supreme Court's 2004 *Crawford* decision is inapplicable to our analysis. *See* 28 U.S.C. § 2254(d)(1) (writ of habeas corpus may not be granted unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"). *See also Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) ("the phrase 'clearly established Federal law, as determined by the Supreme Court of the United States' . . . refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision"). But even if *Crawford* were retroactively applicable to this habeas proceeding, it provides no help to Adams. Overruling *Ohio v. Roberts*, 448 U.S. 56 (1980), *Crawford* held that out-of-court testimonial statements admitted against a defendant, when the defendant had no opportunity (either before or during trial) to cross examine the witness, violate the Confrontation Clause, regardless of the reliability of the admitted statements. *Crawford*, 541 U.S. at 68-69. But the Court expressly said, citing *Street*, that "[t]he [Confrontation] Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Id.* at 59 n.9. Because co-defendant Crowell's statement was admitted via Detective

5

Smith solely for the non-hearsay purpose of impeachment, it "raises no Confrontation Clause concerns." *See Street*, 471 U.S. at 414.

Faced with the insurmountable burden presented by *Street*, Adams identifies three instances in the prosecutor's closing argument where he alleges that the prosecutor improperly used Crowell's statement as substantive evidence against Adams. The first snippet ("Timothy [Crowell] says I didn't do it, Frank Adams did it.") takes the prosecutor's statement woefully out of context. The prosecutor's full statement reads as follows: "[Adams] did exactly what Timothy Crowell did when the police questioned him about the shooting. Yes, I know about it. I was there, but I didn't do it. Timothy Crowell did it. Timothy says, I didn't do it. Frank Adams did it." No fair reading of the complete statement supports Adams's contention that the prosecutor used Crowell's statement as substantive evidence of Adams's guilt. The prosecutor simply used that statement to show that Adams and Crowell were each strategically pointing the finger at the other. The other two statements cited by Adams do not even refer to the statement Crowell made to Detective Smith; rather, those statements are found in the testimony of another witness, Susie Franklin, which is not challenged on appeal.

We find no basis for Adams's claim that the prosecutor improperly used Crowell's statement, which was admitted solely for impeachment purposes, as substantive evidence in the closing argument. And we note that even if the prosecutor did use Crowell's statement improperly in his closing argument—a claim that should have been, but was not, brought as prosecutorial misconduct—Adams does not claim that he made any objection to the prosecutor's closing argument, nor does he claim that the jury was not properly instructed that the prosecutor's argument

6

was not evidence. The prosecutor's use of the statement in argument did not transmute the statement's evidentiary use from impeachment to substantive evidence of guilt.

## CONCLUSION

The TCCA's decision rejecting Adams's Confrontation Clause claim was entirely consistent with the principle set out in *Tennessee v. Street*, 471 U.S. 409 (1985), and was, therefore, neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1). We therefore **AFFIRM** the district court's judgment dismissing Adams's petition for a writ of habeas corpus.

7